# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs November 10, 2009

## STATE OF TENNESSEE v. AMOS OYELEYE

### Direct Appeal from the Criminal Court for Shelby County
### No. 07-04037    W. Mark Ward, Judge

_____

### No. W2009-00085-CCA-R3-CD  - Filed March 22, 2010

_____

A Shelby County jury convicted the Defendant, Amos Oyeleye, of robbery, and the trial court sentenced him to five years of incarceration.  On appeal, the Defendant  contends that the evidence is insufficient to support his conviction and that the trial court erred when it set the length of his sentence.  After a thorough review of the record and the applicable law, we affirm the trial court's judgment.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and J.C. MCLIN, JJ., joined.

Rebecca G. Coffee, Memphis, Tennessee, for the Appellant, Amos Oyeleye.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; John H. Bledsoe, Assistant Attorney General; William L. Gibbons, District Attorney General; Abby Wallace, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION
### I. Facts

This case arises from events that occurred on December 15, 2006, when the victim's car was taken from him at gunpoint.  Based on these events, a Shelby County grand jury indicted the Defendant on one count of aggravated robbery.  The following evidence was presented at the Defendant's trial: Joshua Perkins, the victim, testified that on December 15, 2006, he was driving a  2005 Chevrolet Cobalt that belonged to his friend.  The victim said he had with him three $100 bills  that he received as a Christmas bonus that day, which he

attempted to use to purchase gas. The gas station would not accept a $100 bill for gas, so the victim drove to a walk-in ATM nearby to withdraw smaller bills. The victim's card would not work at the ATM, so he went back to his vehicle.

The victim said that, at this point, a silver car, containing four or five people, all male except for one female, pulled up next to the Cobalt the victim was driving and rolled down a window. The Defendant, who was seated in the front passenger seat of the silver car, asked the victim what he was doing in "that part of town." The victim responded "none of [your] business." The victim recognized the Defendant as "Tokes," a man he lived near and attended high school with as a teenager. The Defendant asked the victim if he wanted to buy marijuana, and the victim declined.

The victim said the Cobalt's passenger door opened, and a man entered the Cobalt and told the victim to get out of the car. The victim refused, and the Defendant approached the victim's window, pulled out a small, black gun, and told the victim to get out of the car. The victim again refused, and the Defendant hit the victim in the chest with the gun. The victim testified he felt both scared and threatened. The Defendant pulled the victim from the car and told the victim to empty his pockets, which the victim did. The Defendant then told the female, later identified as Otia Wilkins, to drive the victim's car and both cars left. As Wilkins drove off in the Cobalt she yelled out the window, "[H]ow does it feel to be robbed now?" The victim estimated the value of the car was around $20,000.

The victim testified that he ran back to the gas station and called the police, who soon arrived. As the police took down information about the incident, they were alerted that an officer had located the vehicle. The police brought the victim to the car's location. The victim recalled that the car had crashed into a sign in front of an apartment complex and that Wilkins was still at the scene. The victim testified that he later identified both the Defendant and Wilkins from photographic line-ups.

On cross-examination, the victim testified about two previous occasions in which he testified in this case. After being shown transcripts of the testimony, the victim agreed that he had testified in the first hearing that he did not go into the ATM and, at the second hearing, that he took out twenty or thirty dollars from the ATM. The victim clarified that he did not remember exactly whether he took money out of the ATM or not, but he did not think his card worked that night.

On recross-examination the victim admitted that he was not sure whether or not he was able to retrieve money from the ATM, but he was sure that he had the $300 Christmas cash bonus with him when he was robbed.

2

Officer Angelo Jennings of the Memphis Police Department responded to this carjacking call, and he testified that upon arriving at the scene the victim told him three males in a gray car carjacked and robbed him when he was leaving an ATM. Officer Jennings recalled that the victim was visibly shaken and upset but coherent. As Officer Jennings was taking down the information, he received notice that another officer had located the Chevrolet Cobalt, so Officer Jennings took the victim to that location. Officer Jennings testified that the victim identified both the car and Wilkins at the scene.

Officer Lawrence Taylor of the Memphis Police Department testified he responded to a call to be on the look-out for a yellow Chevrolet Cobalt. Officer Lawrence located the car, began to follow it and engaged his emergency equipment. Officer Lawrence recalled that the Cobalt did not stop immediately, but continued and ultimately crashed into a sign. Officer Lawrence watched a black male flee from the driver's side of the car, but he was able to arrest Wilkins, who remained in the passenger seat of the Chevrolet Cobalt.

Otia Wilkins testified she had been granted immunity from prosecution for her participation in this robbery in exchange for her testimony in this case. She said that on December 15, 2006, she was riding around in a gray Pontiac Grand Am driven by a man named "Johnny" and that she was accompanied by a man named "Jarvis," who sat in the front passenger seat, and the Defendant, who sat in the backseat with her. Wilkins testified that, of the three men in the car, she knew only the Defendant, who lived near her. Wilkins noticed the victim in a yellow car "flashing" a bag of marijuana. Wilkins asked if anyone in the car knew him, and everyone replied no. She said the victim then rolled down his window and asked if anyone wanted to buy marijuana, and the Defendant inquired about the price. The victim replied that he had a half of an ounce he would sell for eighty dollars and then instructed the group to follow him. Wilkins said that, even though the Defendant only had ten dollars, they followed the victim, parked, and the Defendant got out of the car and talked with the victim. Wilkins could not hear the conversation, but she saw the Defendant punch the victim. The Defendant told Wilkins to drive the Chevrolet Cobalt, but Wilkins refused. Jarvis and Wilkins both got into the Chevrolet Cobalt and Jarvis drove. Wilkins recalled that she noticed a police car behind them before Jarvis crashed into a sign. Jarvis then fled from the car while she remained in the passenger seat. Wilkins admitted that she did not have the victim's permission to be in the car or to take the car, but she explained that she got into the car because she needed to get home. Wilkins testified that she did not receive any proceeds from the robbery. On cross examination, Wilkins testified that the Defendant did not have a gun that night.

Sergeant Joseph Poindexter testified that he worked for the Memphis Police Department in December 2006 and investigated this robbery. Sergeant Poindexter contacted the victim to confirm the report prepared by the officers who responded to the scene and to

3

see if the victim had any additional information. The victim said that his assailant, who had a handgun, got out of a gray vehicle while the victim was sitting in a bank parking lot, forced the victim out of his vehicle, struck the victim with the gun, took approximately $300 from the victim, and ordered someone else to drive the 2005 Chevrolet Cobalt away. The victim provided the nickname of his assailant, and, based on that information, police identified the Defendant as a possible suspect. A photographic lineup was constructed, and the victim identified the Defendant as his assailant.

Sergeant Poindexter testified that the Defendant agreed to talk about the December 15 incident with him and that the Defendant offered an account of the robbery similar to that of the victim. The Defendant admitted he was present during the robbery, where the Chevrolet Cobalt and $300 were taken from the victim, but stated that he did not participate in the robbery. He denied having a weapon or touching the victim. The Defendant stated that Wilkins drove the car from the scene.

On cross examination, Sergeant Poindexter recalled that the Defendant said that the victim waved a bag of marijuana and that the purpose of the stop was to buy drugs. Sergeant Poindexter clarified that, although the Defendant admitted being present and telling Wilkins to get into the Chevrolet Cobalt, he denied participating in the robbery.

Based upon this evidence, the jury convicted the Defendant of robbery, and the trial court sentenced the Defendant to five years for this conviction.

## II. Analysis

The Defendant asserts that the evidence is insufficient to sustain his robbery conviction because of contradictory witness testimony. The Defendant also argues that the trial court misapplied enhancement factors in determining his sentence. The State responds that evidence was presented from which a reasonable juror could conclude that the Defendant committed a robbery and that the trial court properly considered enhancement factors in determining the Defendant's sentence.

### A. Sufficiency of the Evidence

When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the State, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e), *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn.

2002)). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). A conviction may be based entirely on circumstantial evidence where the facts are "so clearly interwoven and connected that the finger of guilt is pointed unerringly at the Defendant and the Defendant alone." *State v. Smith*, 868 S.W.2d 561, 569 (Tenn. 1993). The jury decides the weight to be given to circumstantial evidence, and "[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury." *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (citations omitted). In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999); *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956). "Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *Liakas*, 286 S.W.2d at 859. "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978); *State v. Grace*, 493 S.W.2d 474, 479 (Tenn. 1973). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1996) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. *Goodwin*, 143 S.W.3d at 775 (citing *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000).

In this case, the Defendant was convicted of robbery. A conviction for robbery requires proof beyond a reasonable doubt that the Defendant, without the effective consent of the property owner, knowingly obtained or exercised control over the property, with the

intent to deprive the owner of the property, and accomplished this through violence or putting the owner in fear. *See* T.C.A. § 39-13-401 (2006); T.C.A. § 39-14-103 (2006).

The evidence, considered in the light most favorable to the State, proves that on December 15, 2006, the Defendant, who was riding in the passenger seat of a car, rolled down his window and asked the victim what he was doing in that part of town. One of the men accompanying the Defendant opened the victim's passenger door and entered the vehicle, telling the victim to exit the vehicle. The victim refused, and the Defendant pulled out a small, black gun, and told the victim to get out of the car. The victim again refused, and the Defendant hit the victim with the gun, pulled him from the car, and told him to empty his pockets, which contained $300. The Defendant then directed Wilkins to enter the vehicle and drive it away.

As the Defendant points out, there are discrepancies between the victim's testimony and Wilkin's testimony. As we earlier stated, however, all questions of credibility raised are determined by the jury, which is the "primary instrumentality of justice" in matters of credibility of witness testimony. *Bolin*, 405 S.W.2d at 771; *see also*, *Bland*, 958 S.W.2d at 659; *Liakas*, 286 S.W.2d at 859. Likewise, any discrepancies between the Defendant's testimony at trial and at previous hearings were subject to cross-examination by the defense and the weight and credibility given the victim's testimony at trial is determined by the jury.

Accordingly, we conclude that the evidence is sufficient to support the jury's finding the Defendant guilty of robbery beyond a reasonable doubt. As such, the Defendant is not entitled to relief on this issue.

### B. Sentencing

The trial court sentenced the Defendant as a Range I, standard offender, which allows for a sentence range of three to six years. The trial court then considered enhancement factors, finding that four applied and adjusted the Defendant's sentence upward to five years. The Defendant appeals this decision, arguing that the trial court incorrectly applied the enhancement factors.

When a defendant challenges the length, range or manner of service of a sentence, this Court must conduct a de novo review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." T.C.A. § 40-

6

35-401(d) (2006).  As the Sentencing Commission Comments to this section note, the burden is now on the appealing party to show that the sentencing is improper.  T.C.A. § 40-35-401, Sentencing Comm'n Cmts (2006).  This means that if the trial court followed the statutory sentencing procedure, made findings of facts which are adequately supported in the record, and gave due consideration and proper weight to the factors and principles relevant to sentencing under the Sentencing Act, Tennessee Code Annotated section 40-35-103 (2006), the appellate court may not disturb the sentence even if a different result was preferred.  *State v. Ross*, 49 S.W.3d 833, 847 (Tenn. 2001).  The presumption does not apply to the legal conclusions reached by the trial court in sentencing a defendant or to the determinations made by the trial court which are predicated upon uncontroverted facts.  *State v. Dean*, 76 S.W.3d 352, 377 (Tenn. Crim. App. 2001); *State v. Butler*, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); *State v. Smith*, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994).

In conducting a de novo review of a sentence, we must consider:  (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 4-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant made in the defendant's own behalf about sentencing.  *See* T.C.A. § 40-35-210 (2006); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001).  We must also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed.  T.C.A. § 40-35-103 (2006).

Specific to the review of the trial court's finding enhancement and mitigating factors, "the 2005 amendments deleted as grounds for appeal a claim that the trial court did not weigh properly the enhancement and mitigating factors."  *State v. Carter*, 254 S.W.3d 335, 344 (Tenn. 2008).  The Tennessee Supreme Court continued, "An appellate court is therefore bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act."  *Id*. at 346.  The trial court shall also consider, but is not bound by, the guideline that the minimum sentence within the range should be imposed, but the sentence length, within the range, should be adjusted based on the presence or absence of mitigating and enhancement factors.  T.C.A. § 40-35-210(c)(1) and (2) (2006).

The trial court found that there were no applicable mitigating factors, but it found that the following enhancement factors applied:

(1) The defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range;

(2) The defendant was a leader in the commission of an offense involving two (2) or more criminal actors;

(8) The defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release in to the community;

(9) The defendant possessed or employed a firearm, explosive device, or other deadly weapon during the commission of the offense.

T.C.A. § 40-35-114 (1), (2), (8), and (9) (2006). The Defendant challenges the trial court's application of these enhancement factors.

The Defendant claims that the trial court improperly applied enhancement factor (1), that the defendant has a previous history of criminal convictions or behavior, by considering convictions where the offense date was after the offense date in the instant case, to enhance the Defendant's sentence. The trial court found that the Defendant had four prior felonies and four prior misdemeanors, in addition to those necessary to establish the appropriate range. The pre-sentence report reflects four prior felony convictions and four prior misdemeanor convictions. The most recent of these convictions is a misdemeanor with an offense date of December 19, 2006, which is subsequent to the December 15, 2006, offense date in this case. The Defendant argues that this conviction should not be considered because the offense occurred after the charge at issue. The conviction date for the misdemeanor, however, was February 20, 2007, which was well before the sentencing hearing in this case on November 21, 2008, making the misdemeanor a previous conviction. In any event, "[t]his Court has previously stated that criminal convictions or criminal behavior occurring prior to the sentencing hearing may be considered under enhancement factor (1), regardless of whether the criminal conduct occurred before or after the commission of the offense under consideration." *State v. Joe Mitchell*, No. W1999-06610-CCA-R3-CD, 2000 WL 633340, at *6 (Tenn. Crim. App. 2000). Thus, the trial court appropriately applied enhancement factor (1).

8

The Defendant next argues that enhancement factor (2) is inapplicable because the record contains no proof of other criminal actors. Our review of the trial testimony indicates otherwise. The victim testified that a male, other than the Defendant, first entered the Chevrolet Cobalt and ordered him to exit the car. When the victim refused, the Defendant then approached the driver's side window and ordered the victim to exit the car. The victim again refused and the Defendant forced the victim from the car, hit the victim and took the victim's money. The Defendant then ordered Wilkins to drive the Chevrolet Cobalt away from the scene. Wilkins also testified that the Defendant ordered her to drive, and when she refused, Jarvis drove the Chevrolet Cobalt from the scene and later wrecked the vehicle and fled. Even the Defendant, in statements made to police, acknowledged that he told Wilkins to get in the Chevrolet Cobalt. The record adequately supports the trial court's finding that enhancement factor (2) was applicable.

The Defendant relies upon *State v. Dean*, 76 S.W.3d 352, 380 (Tenn. Crim. App. 2001), for the proposition that the trial court erred in applying enhancement factor (8), that the defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community. The Defendant asserts that the trial court did not adequately determine the disposition of the violation of probation because it relied solely on the pre-sentence report. We conclude, however, that the Defendant's reliance upon *State v. Dean* is misplaced. The facts in *Dean* are distinguishable from the facts in this case in that, in *Dean*, the pre-sentence report only revealed that there was a violation and indicated the violation was being "held for parole board" with no disposition or outcome otherwise noted. *Id*. In the present case, the pre-sentence report indicates not only the violation but also the result of the violation, which was an eight-month sentence. Thus, we conclude that the trial court's finding that enhancement factor (8) was applicable is adequately supported by the record.

Finally, the Defendant asserts that the trial court erred in applying enhancement factor (9), that the Defendant possessed a firearm when the jury had convicted the Defendant of robbery rather than the indicted offense of aggravated robbery, which requires proof of a deadly weapon. The Defendant is correct that a trial court applying pre-2005 sentencing law cannot enhance a defendant's sentence above the presumptive minimum unless the facts relied upon to support the enhancement were found beyond a reasonable doubt by a jury or trial court, if the defendant waived his right to jury determination. *See State v. Gomez*, 239 S.W.3d 733 (Tenn. 2007). The sentencing laws used in this case, however, are the 2005 amended sentencing laws that removed the requirement that trial courts make factual findings before enhancing a sentence from the presumptive minimum sentence. T.C.A. § 40-35-210 (2006). Under the new act, the trial court shall set a sentence within the range, and the length should be adjusted for appropriate enhancement or mitigating factors. *Id.* In doing so, the court

"shall consider" advisory sentencing guidelines, such as adjustment for appropriate mitigating and enhancement factors, but is "not bound by" them. *Id.* Thus, the fact that the jury did not find beyond a reasonable doubt that the Defendant possessed a firearm does not preclude the trial court from finding by a preponderance of the evidence that the Defendant possessed a firearm. The record supports application of this factor, therefore, the Defendant is not entitled to relief.

Based upon the foregoing, we conclude that the trial court appropriately followed sentencing guidelines, made findings of fact adequately supported by the record, and gave due consideration to Sentencing Act principles and factors. We, therefore, affirm the Defendant's sentence, and he is not entitled to relief on this issue.

### III. Conclusion

In accordance with the aforementioned reasoning and authorities, we affirm the Defendant's conviction and sentence.

_____
ROBERT W. WEDEMEYER, JUDGE